[Cite as *State v. Christian*, 2017-Ohio-8249.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | C.A. CASE NO. 27236 |
| | : | |
| v. | : | T.C. NO. 11-CR-563 |
| | : | |
| EVA CHRISTIAN | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

**O P I N I O N**

Rendered on the ___20th___ day of _____October_____, 2017.

. . . . . . . . . . .

HEATHER N. JANS, Atty. Reg. No. 0084470, Assistant Prosecuting Attorney, 301 W. Third Street, 5th floor, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

BROCK A. SCHOENLEIN, Atty. Reg. No. 0084707, 371 W. First Street, Second Floor, Dayton, Ohio 45402
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

DONOVAN, J.

    **{¶ 1}** Defendant-appellant Eva Christian appeals a decision of the Montgomery County Court of Common Pleas, Criminal Division, resentencing her to nine years in prison. Christian filed a timely notice of appeal on August 25, 2016.

    **{¶ 2}** We set forth the history of the case in *State v. Christian*, 2d Dist. Montgomery No. 25256, 2014-Ohio-2672 (hereinafter "*Christian I*"), and repeat it herein in pertinent

part:

In March 2011, Christian was indicted as follows: Count One, insurance fraud (related to her home), in an amount greater than or equal to $5,000 but less than $100,000; Count Two, insurance fraud (related to the restaurant), in an amount greater than $100,000; Count Three, making false alarm (related to the burglary at her home), resulting in economic harm of more than $5,000 but less than $100,000; and Count Four, making false alarm (related to the vandalism and fire at the restaurant), with economic harm of $500 or more but less than $5,000. In June 2011, an additional count of engaging in a pattern of corrupt activity (Count Five) was added by a separate indictment. Christian filed a motion to suppress evidence, which was overruled following a hearing. The matter was tried to a jury over several days in May 2012. The jury found Christian guilty on all counts.

The trial court sentenced Christian to 18 months and 36 months, respectively, on counts one and two of insurance fraud; it sentenced her to 18 and 12 months, respectively, on counts three and four, making false alarms. The court sentenced Christian to nine years on the count of engaging in a pattern of corrupt activity. The court ordered that counts one through four were to be served consecutively to each other but concurrently with count five, for an aggregate term of nine years. The trial court ordered Christian to pay restitution as follows: $51,751.96 to Cincinnati Insurance, $21,485.29 to Erie Insurance; $8,647.33 to the Montgomery County Sheriff's Department; and $2,748.77 to the Miami Township Fire

Department. The court also ordered Christian to pay court costs and to forfeit her house, due to its use in her offense of engaging in a pattern of corrupt activity. It informed Christian that she would be subject to post-release control for five years on Count Five and that she may be subject to post-release control for three years on all of the other offenses.

*Id.* at ¶ 21, 22.

**{¶ 3}** In *Christian I*, we reversed Christian's conviction for engaging in a pattern of corrupt activity. Additionally, we modified Christian's convictions for insurance fraud (Count II) and making false alarms (Count III) to reflect lower degrees of the offenses pursuant to H.B. 86. Thereafter, we remanded the matter to the trial court for resentencing on Counts II and III. The State appealed our decision to the Ohio Supreme Court, which reversed and remanded on the basis of its decision in *State v. Beverly*, 143 Ohio St.3d 258, 2015-Ohio-219, 37 N.E.3d 116. *State v. Christian*, 143 Ohio St.3d 417, 2015-Ohio-3374, 38 N.E.3d 888.

**{¶ 4}** In *State v. Christian*, 2016-Ohio-516, 56 N.E.3d 391 (2d Dist.) (hereinafter "*Christian II*"), we stated the following in pertinent part:

In our prior Opinion [*Christian I*], we reversed Christian's conviction for engaging in a pattern of corrupt activity, finding that it was supported by insufficient evidence. Specifically, we held that there was insufficient evidence that Christian had engaged in an "enterprise" with the two individuals who helped her stage the events that gave rise to her convictions for insurance fraud; the existence of such an "enterprise" is one element of the offense of engaging in a pattern of corrupt activity. We relied on our

holding in *State v. Beverly,* 2d Dist. Clark No. 2011 CA 64, 2013-Ohio-1365, which held that, in order to establish the "enterprise," there must be some evidence of "(1) an ongoing organization, formal or informal; (2) with associates that function as a continuing unit; and (3) with a structure separate and apart, or distinct, from the pattern of corrupt activity." *Christian* at ¶ 74, quoting *Beverly* at ¶ 26. We found that the "structure" of the efforts of Christian and her associates did not go beyond Christian's efforts to stage crimes to defraud her insurance companies, and thus that the organization did not have "a structure separate and apart, or distinct, from the pattern of corrupt activity." *Christian* at ¶ 76-79.

The State appealed from our judgment reversing Christian's conviction for engaging in a pattern of corrupt activity. The State also asked us to certify a conflict between our holding and several holdings of other courts of appeals, and we did certify that *Christian* was in conflict with one of those cases. *State v. Christian,* 2d Dist. Montgomery No. 25256, Decision & Entry, August 24, 2014.

****

The Supreme Court decided *Beverly* in January 2015. *State v. Beverly,* 143 Ohio St.3d 258, 2015-Ohio-219, 37 N.E.3d 116. It held that "[n]othing in R.C. Chapter 2923 [which includes R.C. 2923.32, defining the offense of engaging in a pattern of corrupt activity] implicitly or explicitly states that an enterprise and a pattern of corrupt activity must be proven with separate evidence." *Id.* at ¶ 8. The court further stated that, with respect

to proof of the existence of an enterprise and of the associated pattern of corrupt activity, one does not necessarily establish the other, but "logically, evidence that proves one of the elements can sometimes prove the other, even though it doesn't necessarily do so." *Id.* at ¶ 10.

In so holding, the Court rejected this court's holding in *Beverly* that there was insufficient evidence that the defendants were involved in any type of ongoing organization, functioning as a continuing unit, with a structure separate and apart from the pattern of corrupt activity. The Supreme Court also, sua sponte, rejected any argument that the conviction was against the manifest weight of the evidence.

Subsequently, the Supreme Court vacated our judgment in *Christian* [*I*] and remanded for us to "consider the evidence of an enterprise in light of" its decision in *Beverly. State v. Christian,* 143 Ohio St.3d 417, 2015-Ohio-3374, 38 N.E.3d 888, ¶ 1. ***.

*Christian II* at ¶¶ 2-8.

{¶ 5} On remand, we held in light of the Ohio Supreme Court's interpretation of the statutory definition of an "enterprise" for purposes of engaging in a pattern of corrupt activity, as set forth in *Beverly*, Christian's conviction for engaging in a pattern of corrupt activity was supported by sufficient evidence and was not against the manifest weight of the evidence. Therefore, we reinstated Christian's prior conviction of that offense, but we modified it from a felony of the first degree to a felony of the second degree, due to our prior judgment (*Christian I*) that the underlying offense was a felony of the fourth degree, rather than a felony of the third degree. Finally, we remanded the matter to the

trial court for resentencing on Counts II, III, and V. *Christian II* at ¶¶ 36, 37.

{¶ 6} Thereafter, a hearing was held before the trial court on July 27, 2016, at which Christian was resentenced as follows:

Count I, Insurance Fraud (Fourth Degree Felony): Eighteen months;

Count II, Insurance Fraud (Reduced to a Fourth Degree Felony): Twelve months;

Count III, Making False Alarms (Reduced to a Misdemeanor of the First Degree): 180 days;

Count IV, Making False Alarms (Fifth Degree Felony): Twelve months; and

Count V: Engaging in a Pattern of Corrupt Activity (Reduced to a Second Degree Felony): Eight years.

The trial court ordered Count I to be served consecutively to Count IV; Count II was to be served consecutively to Count V; Count III was ordered to be served concurrently to Counts I, II, IV, and V; and Counts II and V were to be served concurrently with Counts I and IV, for an aggregate sentence of nine years. Significantly, nine years in prison is the same sentence Christian received when she was originally sentenced on June 19, 2012.

{¶ 7} We note that on July 27, 2016, the trial court issued a "Supplemental Termination Entry" which consisted of a form in which the court simply checked off its reasons for ordering consecutive prison terms pursuant to R.C. 2929.14(C)(4). Thereafter, on August 5, 2016, the trial court issued a termination entry in which it outlined the terms of Christian's resentencing. The termination entry, however, did not contain the language pursuant to R.C. 2929.14(C)(4) regarding its findings in support of its

imposition of consecutive sentences.[1]

{¶ 8} Christian's appeal is now properly before this Court.

{¶ 9} Christian's sole assignment of error is as follows:

{¶ 10} "THE TRIAL COURT ABUSED ITS DISCRETION IN RESENTENCING CHRISTIAN WHEN IT MADE NEW FACTUAL FINDINGS UPON RESENTENCING THAT CONTRADICTED THOSE MADE AT THE ORIGINAL SENTENCING, AND WHEN NO NEW FACTS HAD BEEN PRESENTED."

{¶ 11} In her sole assignment, Christian contends that the trial court abused its discretion at her resentencing because no new facts were presented since her original sentencing which warranted the imposition of consecutive sentences. We need not address Christian's sole assignment, however, because we find, based on the record in the instant case, that the trial court erred by increasing a sentence that had been completed at the time of resentencing.[2] Specifically, we find that by the time that Christian was resentenced following our remand in *Christian II*, over four years had lapsed. By virtue of the remand in *Christian II*, Christian's sentence to be served on the predicate offenses, Counts I, II, III, IV, totals not more than three and one-half years. In her original termination entry, the trial court ordered that Counts I – IV were to be served consecutively to one another but concurrently with Count V, for an aggregate sentence

---

[1] We note that on September 29, 2016, well after Christian filed notice of appeal with this Court, the trial court apparently became aware of the omission and issued a nunc pro tunc termination entry wherein it included the language pursuant to R.C. 2929.14(C)(4) explaining it findings in support of consecutive sentences.

[2] On August 1, 2017, we issued an order to the parties to be prepared to address at oral argument, on Tuesday, August 22, 2017, the issue of whether Christian completed her sentence on Count II prior to her resentencing on July 27, 2016.

of nine years.

**{¶ 12}** Before the imposition of H.B. 86, Christian's sentences were as follows: Count I (Eighteen months); Count II (Thirty-Six months); Count III (Eighteen months); Count IV (Twelve months); and Count V (Nine years). Counts I – IV total eighty-four months or seven years in prison. After the imposition of H.B. 86, Christian's sentences for Counts I – V were reduced by operation of law and the trial court resentenced as follows:

*Count I*, Insurance Fraud (Fourth Degree Felony): Eighteen months;

*Count II*, Insurance Fraud (Reduced to a Fourth Degree Felony): Twelve months;

*Count III*, Making False Alarms (Reduced to a Misdemeanor of the First Degree): Six months [180 days];

*Count IV*, Making False Alarms (Fifth Degree Felony): Twelve months; and

*Count V*, Engaging in a Pattern of Corrupt Activity (Reduced to a Second Degree Felony): Eight years.

**{¶ 13}** As previously noted, the trial court originally ordered Counts I – IV to be served consecutively to one another but concurrently to Count V. After the passage and implementation of H.B. 86, Christian's total sentence for Counts I – IV, served consecutively with one another, with the exception of Count III, a misdemeanor, is three and one-half years. Thus, at the time of her resentencing on July 27, 2016, Christian had already served over four years in prison, thereby satisfying each of her sentences imposed for Counts I – IV.

**{¶ 14}** The Fourth District Court of Appeals addressed a similar issue in *State v.*

*Mockbee*, 4th Dist. Scioto No. 14CA3601, 2015-Ohio-3469. In *Mockbee*, the defendant received concurrent and consecutive sentences at his initial sentencing. Following a reversal and remand for resentencing, the trial court imposed entirely consecutive sentences. *Id.* at ¶ 4–9. The Fourth District initially affirmed but later allowed the defendant to re-open his appeal to raise the issue of whether the trial court erred by changing sentences from concurrent to consecutive where the defendant had completed them prior to resentencing. *Id.* at ¶ 10–13. The Fourth District relied primarily on *State v. Holdcroft*, 137 Ohio St.3d 526, 2013-Ohio-5014, 1 N.E.3d 382, which involved an attempt to impose post-release control where the defendant already had completed his prison term for the offense but still remained in prison for other offenses. The Fourth District also cited this court's opinion in *State v. Powell*, 2d Dist. Montgomery No. 24433, 2014-Ohio-3842, which addressed the order of service for consecutive sentences and construed ambiguity in favor of the defendant. In particular, the *Mockbee* court reasoned:

> At the time Mockbee was resentenced, his original sentences for Counts 8, 9, and 10 were for 18 months or less, and they were ordered to be served concurrently to each other and to his Count 12 conviction. In addition, Mockbee's original sentences for Counts 4 and 7 were also less than 18 months, but they were ordered to be served consecutively to each other for an aggregate term of 30 months—and concurrent to the other counts—including Counts 8, 9, 10, and 12.
>
> "[W]hen a defendant is sentenced to concurrent terms, * * * the sentences are served simultaneously." *State v. Fugate*, 117 Ohio St.3d 261,

2008-Ohio-856, 883 N.E.2d 440, ¶ 22. By the time he was resentenced, Mockbee had already served his original sentences for his convictions on Counts 8, 9, and 10, which had been ordered to be served concurrently to each other and to his convictions on Counts 4, 7, and 12. Therefore, the trial court lacked jurisdiction to resentence him on Counts 8, 9, and 10 and to order that they be served consecutively to each other because his original sentences for those convictions had already been served. *Holdcraft* [sic], 137 Ohio St.3d 526, 2013-Ohio-5014, 1 N.E.3d 382, ¶ 19.

For Counts 4 (12 months) and 7 (18 months), which the trial court ordered to be served consecutively in its original sentencing entry, the aggregate 30–month term had not expired at resentencing. In *Holdcroft*, the court held that for consecutive sentences, the defendant served the lengthier sentence first (i.e., Holdcroft served his ten-year sentence for aggravated arson before his five-year sentence for arson). *See also State v. Powell*, 2d Dist. Montgomery No. 24433, 2014–Ohio–3842, ¶ 28 (noting the general absence of authority for the order in which a defendant serves his or her sentences when consecutive sentences are imposed on multiple counts, but observing that the court should construe any ambiguity in sentencing entry in favor of the defendant). The state relies on Ohio Adm.Code 5120–2–03.1(F) to argue that Counts 4 and 7 are treated as an aggregate 30–month sentence so that Mockbee had not served his sentence for either of them at resentencing. However, that provision specifies only the aggregate sentence to be served when consecutive

sentences are imposed; it does not specify a rule as to which of the individual sentences ordered to be served consecutive to each other is served first. Applying *Holdcroft* here, Mockbee served his original 18–month sentence for Count 7 first and that sentence expired by the time the trial court resentenced him. Therefore, the trial court lacked authority to resentence Mockbee on that count as well.

Consequently, we conclude that the trial court erred by resentencing Mockbee on Counts 7, 8, 9, and 10 because his original sentences for those convictions had been completely served by him by that time. Because resentencing on these convictions was clearly and convincingly contrary to law, we sustain Mockbee's sole assignment of error on reopening.

*Mockbee* at ¶ 31-34.

{¶ 15} In the instant case, we note that in the original termination entry and every subsequent entry issued by the trial court, each count has always been listed in order, namely Count I, Count II, Count III, Count IV, and Count V. Therefore, absent any additional direction from the trial court, it is clear that the order in which the sentences are to be served should follow that particular sequence. Moreover, Counts I – IV are predicate offenses to Count V, so it is logical that the predicate offenses were to be served prior to Count V. Prior to resentencing, the trial court originally ordered that Counts I - IV were to be served consecutively to each other but concurrently with Count V. Therefore, at the very least, the sentences imposed for Counts I – IV were being served at the same time as the sentence imposed for Count V. Thus, by the time of resentencing, Christian had already served the original term imposed for Counts I – IV.

{¶ 16} We also note that although the Supreme Court's specific holding in *Holdcroft* is limited to post-release control, the general rule that the court discussed to reach that holding is not. Significantly, the Supreme Court recognized that "[n]either this court's jurisprudence nor Ohio's criminal-sentencing statutes allow a trial court to resentence a defendant for an offense when the defendant has already completed the prison sanction for that offense." *Holdcroft* at ¶ 19. Under these circumstances, "[i]t is irrelevant whether the defendant is still in prison for other offenses." *Id.; see also Holdcroft* at ¶ 16, citing *State v. Raber,* 134 Ohio St.3d 350, 2012-Ohio-5636, 982 N.E.2d 684 ("Directly pertinent to the issue here, we held that Raber—who had served the imposed sentence of incarceration—had a legitimate expectation of finality in his sentence and the trial court was precluded from imposing additional punishment upon him").

{¶ 17} Conversely, the State cites *State v. Martin–Williams,* 5th Dist. Stark No. 2014CA86, 2015–Ohio–780, in which the court of appeals recently declined to extend *Holdcroft* to a case in which the resentencing occurred after a remand for the limited purpose of the trial court making the statutory findings required to support its imposition of consecutive sentences. *Martin–Williams*, however, is distinguishable from the instant case. At Christian's resentencing hearing, the trial court modified a sentence for Count II, a predicate offense that was already completed, altering it from concurrent to consecutive to Count V, the corrupt activity conviction. Similar to *Mockbee*, the instant case "does not involve resentencing to include findings to support previously imposed consecutive sentences, i.e., the sentences were not altered or the aggregate time of the pertinent offenses increased in *Martin–Williams.*" *Mockbee* at ¶ 30.

{¶ 18} In further support of its argument that we should not extend *Holdcroft* to the

instant case, the State cites *State v. Shabazz*, 2017-Ohio-2984, ____ N.E.3d ____ (8th Dist.). In *Shabazz*, the trial court initially ordered the defendant's offenses to be served consecutively, and he did not challenge the imposition of consecutive sentences in his direct appeal. Similar to *Martin-Williams*, the imposition of a consecutive sentence at Shabazz's resentencing hearing did not increase his aggregate sentence for the counts addressed. *Shabazz* does not involve a situation such as in the instant case where the trial court initially imposed concurrent sentences and only upon a remand for resentencing, attempted to impose, for the first time, a consecutive sentence where one of the originally concurrent sentences had been completed. *See Mockbee* at ¶ 30. Accordingly, both *Martin-Williams* and *Shabazz* are distinguishable from the instant case.

{¶ 19} In *State v. Metcalf,* 2016-Ohio-4923, 68 N.E.3d 371 (8th Dist.), the court found that correction of post-release control and sex offender classification sentencing errors are to be treated similarly. *Id.* at ¶ 20-21. *Metcalf* involved a defendant who was convicted of a sexually-oriented offense giving rise to a Tier III sex offender classification. Metcalf was not notified of the sex offender classification at the sentencing hearing and the sentencing entry made no mention of a sex offender classification. Metcalf was sentenced to consecutive prison terms for the sexually-oriented offense and an unrelated post-release control violation. The mistake was discovered after Metcalf had completed the sentence for the sexually-oriented offense but while he remained imprisoned on the post-release control violation. Metcalf was brought before the sentencing court and advised of the imposition of the Tier III sex offender classification, and a new sentencing entry was journalized to reflect the Tier III sex offender classification.

{¶ 20} Relying upon *Holdcroft,* the Eighth District reversed the imposition of the

sex offender classification because Metcalf had completed the sentence for the sexually-oriented offense by the time the sex offender classification was imposed. The court noted that *Holdcroft* involved post-release control, as opposed to sex offender classification, and stated as follows:

> Although we recognize that *Holdcroft* involved the imposition of post-release control, as opposed to the sexual offender classification at issue here, we note that the general rules and principles relied upon by the court were not limited to the issue of post-release control.

*Metcalf* at ¶ 20.

{¶ 21} Most recently in *State v. Beverly*, 2d Dist. Clark No. 2015-CA-71, 2017-Ohio-7093, the appellant argued in an application to reopen his appeal that he had completed two eighteen–month prison terms for receiving stolen property (counts II and V) and a twelve–month prison term for receiving stolen property (count III) prior to the resentencing at which the trial court ordered these sentences to be served consecutively to all others. *Id.* at ¶ 7. The appellant argued that the trial court lacked authority to make this change. *Id.* Relying on *Mockbee*, we found that there was a genuine issue as to whether appellate counsel provided prejudicially deficient representation by failing to challenge his resentencing on counts for which he at least potentially already had completed his sentence. *Id.*

{¶ 22} The State cites *State v. Huber,* 8th Dist. Cuyahoga No. 98206, 2012-Ohio-6139, for the proposition that sentences that have been vacated on appeal are void sentences, and therefore, could not have been completed. Specifically, the State argues that because Counts II, III, and V were vacated in *Christian II*, the sentences for those

counts were void, and Christian could not have completed a sentence (Count II, twelve months) that did not exist.

{¶ 23} In *Huber*, the defendant was originally convicted of kidnapping, attempted felonious assault, and two counts of aggravated robbery, all with repeat violent offender and notice of prior conviction specifications. The trial court sentenced Huber to an aggregate 15 years in prison. The Eighth District Court of Appeals affirmed Huber's convictions, but held that the trial court erred by sentencing him to six-years on each of the aggravated robbery counts and merging them. Rather, the court of appeals held that the trial court should have merged the counts and only issued one sentence. *See Huber,* 2012-Ohio-6139, at ¶ 5. The court further held that Huber's aggravated robbery conviction did not merge with his kidnapping or attempted felonious assault convictions. *Id.* The court also affirmed the trial court's imposition of consecutive sentences, but determined that the trial court erred by not advising Huber of the consequences of violating the terms of his post-release control. *Id.* The case was remanded for resentencing. *Id.*

{¶ 24} Upon remand, the State elected to proceed on the first count of aggravated robbery. The trial court merged the second count of aggravated robbery into the first count of aggravated robbery, and imposed a prison term of six years for the merged aggravated robbery offense. The trial court noted that Huber's sentence for kidnapping and attempted felonious assault remained the same, as well as the court's order that the aggravated robbery, kidnapping, and attempted felonious assault prison terms be served consecutive to one another. Thus, the trial court imposed an aggregate sentence of 15 years in prison. *Id.* at ¶ 6.

**{¶ 25}** Thereafter, Huber again appealed, arguing that the trial court should have conducted a de novo sentencing hearing on all of the offenses for which he was convicted. The court of appeals found that the effect of Huber's prior appeal resulted in certain counts being vacated, and he was entitled to de novo sentencing on those counts only. *Huber* at ¶ 22. The court of appeals stated as follows:

> The significance of this court's vacation of part of Huber's sentence is that upon remand Huber *did not have a sentence for aggravated robbery* or post-release control. As part of Huber's de novo sentencing hearing, the state had to elect which aggravated robbery offense it was going to proceed on, which it did. The trial court then merged the aggravated robbery offenses and sentenced Huber to six years in prison for aggravated robbery. The trial court then noted that Huber's sentence for attempted felonious assault and kidnapping remained the same, as well as the consecutive portion of Huber's original sentence, for an aggregate 15 years in prison.

*Id.* at ¶ 23 (Emphasis in the original).

**{¶ 26}** However, Huber, unlike Christian, had not completed any of the individual sentences originally imposed for his multiple offenses at the time he was resentenced. At issue in *Huber* was whether the trial court was required to conduct a de novo sentencing hearing with respect to sentences which had been vacated on appeal and its authority to impose consecutive or concurrent sentences. As previously stated, the instant case involves a situation where the trial court attempted to impose, for the first time, a consecutive sentence on a count where the original sentence has been served.

*Huber* is clearly distinguishable from the instant case.

{¶ 27} The voiding of an original conviction does not render time served under that conviction a nullity. We reject the conceptual fiction that a complete but voided sentence has no legal existence. Otherwise, years served on such counts would be subject to being twice served. Furthermore, we cannot embrace a sentence nullity argument which offends the double jeopardy clause. *See generally North Carolina v. Pearce*, 395 U.S. 711, 716-717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), *overruled on other grounds*, *Alabama v. Smith*, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989). The U.S. and Ohio Constitutions require that punishment already exacted must be fully credited in imposing sentence upon reversal and remand.

{¶ 28} In light of the foregoing analysis, we find that Count II, which the trial court had ordered to be served concurrently in its original sentencing entry to Count V, had been completed and served by the time Christian was resentenced on July 27, 2016. Thus, the trial court could not order that Count II's twelve month sentence, which had already been served, be served after completion of the modified eight year term in Count V. In sum, the trial court is instructed to resentence Christian on Count II to reflect that it is concurrent with Count V for an aggregate term of eight years.

{¶ 29} Thus, the judgment of the trial court is reversed.

{¶ 30} The judgment of the trial court having been reversed, we need not address the argument in Christian's assigned error regarding the lack of new facts as it is rendered moot by the foregoing analysis. Therefore, this matter is remanded to the trial court for resentencing proceedings consistent with this opinion.

. . . . . . . . . . . . .

FROELICH, J. and TUCKER, J., concur.

Copies mailed to:

Heather N. Jans
Brock A. Schoenlein
Hon. Barbara P. Gorman